United States District Court
Southern District of Texas
**ENTERED**
December 05, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 16-2232 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE and EXECUTIVE DIRECTOR BRAD LIVINGSTON, in his official capacity, | § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss (Document No. 5), in which Defendant seeks dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. According to Defendants, Plaintiff's' retaliation claim against Defendant Texas Department of Criminal Justice ("TDCJ") under Title VII is subject to dismissal because there are no facts that establish a plausible, causal connection between Plaintiff's alleged protected activity and an adverse employment action. As for Plaintiff's constitutional and statutory claims under 42 U.S.C. § § 1981, 1983 against Defendant Livingston in his official capacity, Defendants argue that there is no sovereign immunity exception that applies. Plaintiff, in response to the Motion to Dismiss, states that he "does not oppose the dismissal of his Ex Parte Young claims against the TDCJ Executive Director in his official capacity." (Document No. 6 at 1). With respect to the Title VII retaliation claim, Plaintiff maintains that he has alleged sufficient facts that establish a causal connection between his alleged protected activity, and the alleged retaliation he claims to have suffered.

Having considered Defendants' Motion to Dismiss, Plaintiff's response, and the claims and

allegations in Plaintiff's original complaint, it is ORDERED, for the reasons set forth below, that Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at

1950.

Plaintiff has agreed to the dismissal of his §§ 1981, 1983 claims against Defendant Livingston in his official capacity.  Defendants' Motion to Dismiss those claims is therefore GRANTED, and Plaintiff's c §§ 1981, 1983 claims are DISMISSED WITH PREJUDICE.

As for Plaintiff's Title VII retaliation claim, retaliation is prohibited by Title VII as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a).  To maintain a Title VII retaliation claim, a plaintiff must first establish a *prima facie* case of retaliation, with allegations that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision.  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988).  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII."  *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).  What constitutes an "adverse employment action" for purposes of a retaliation claim is any action taken by an employer that is harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006);  *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *see also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 707 (S.D. Tex. 2014) (what

constitutes an adverse employment action for a retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation). But, at the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Here, Plaintiff's allegations in his Complaint in support of his retaliation claim are as follows:

> 55.   On July 23, 2015, Jones notified TDCJ management via email of his intent to assist Ford [a co-employee] with Ford's discrimination and retaliation lawsuit against TDCJ as well as possibly joining Ford as a plaintiff against TDCJ with the same claims.
>
> 56.   On August 10, 2015, less than three weeks after Jones' protected activity email described above, in the presence of Lieutenant Roderick Smith (who was copied on the email referenced above who was the highest ranking officer present in the field with Jones that day), Jones was ordered to relinquish his fire arm, hand over the reigns of his horse, get off of his horse, and handcuff a non-compliant offender and to do so by himself without any back-up, even though the dispute had originated from the offender toward Jones.  This order to Jones violated TDCJ policy which calls for de-escalation and was also unjustified since Roderick Smith could have ordered another officer to place restraints on the offender, could have called the Unit to send backup to place restraints on the offender, or ordered a backup to assist Jones there in the field so that Jones was not by himself in the field.

57. As Jones attempted to handcuff the offender, as instructed, the offender struck Jones' left cheekbone with his fist. The offender continued attacking Jones so violently that Jones was in fear for his life and suffered major and eventually debilitating injuries.

58. The offender did not stop attacking Jones until Jones was able to subdue the offender through physical force.

59. During the fight, Roderick Smith took no steps to assist or protect Jones until Jones had already subdued the offender and the fight was over.

60. Roderick Smith also did not take appropriate steps to assist or protect Jones for the remainder of the shift, which placed Jones unnecessarily and unjustifiably in mortal danger at least twice; and caused Jones substantial bodily and psychological injury.

61. TDCJ management also failed to follow reporting protocols or take reasonable and timely disciplinary steps against the offender compared to the way other offenders had been treated when involved in altercations with TDCJ officers that had not been engaged in protected activity.

62. Jones' injuries have required hm to take extended leave, undergo multiple surgeries, and recuperate away from work.

63. Jones' injuries have also caused him to seek medical attention and treatment for his psychological damages resulting from the August 10, 2015 threat to his life and TDCJ's failure to protect him from harm.

64. Jones was kept on disability leave but was eventually separated from his position given the fact that his injuries would not allow him to be released to return to work.

65. TDCJ has engaged in several actions that have denied or delayed medical treatment or coverage for the harm Jones suffered on August 10, 2015 in retaliation for his protected activity on July 23, 2015.

Complaint (Document No. 1) at 10-12). Taking these allegations as true, Plaintiff has stated a plausible claim for retaliation.

Defendant TDCJ concedes in the Motion to Dismiss that "Jones's complaint properly establishes the first element of his prima facie case." Defendants' Motion to Dismiss (Document

No. 5) at 3.  Defendant then assumes that Jones has, with his allegations that he was assaulted by a violent offender, sufficiently alleged an adverse action – the second element of his prima facie case. Defendant then focuses on the "causal connection" element of Jones' prima facie case, arguing that there is "no *reasonable* argument that the assault on Jones was occasioned by any actor omission by Smith or TDCJ as an act of retaliation for his protected activity."  Defendant prefaces that argument, with a recitation of additional, un-asserted facts surrounding the assault that are not contained in Jones' Complaint:

> Jones' causation theory is manifestly implausible where it requires Smith to have secretly obtained the offender's agreement to refuse to work, his agreement to disobey orders to return to work, his agreement to wait for Scott to order Jones to dismount and hand his weapon to a nearby officer, his agreement to resist Jones's attempt to secure him in hand restraints and most importantly his agreement to assault Jones within view of armed, horseback-mounted correctional officers who were authorized to shoot and kill him – all without ever uttering a word about his agreement with Smith to anyone.  Jones further implausibly implies that Smith did all of these things because Smith was so alarmed by Jones's cooperation with Ford's lawyer and the possibility of Jones filing his own lawsuit against TDCJ that he was prepared to risk his career – and freedom, since conspiring to assault a public servant is a crime – Jones's life and even the life of a convicted felon to discourage legal claims that neither directly nor indirectly implicated him in any way."

Defendants' Motion to Dismiss (Document No. 5) at 4-5.

Putting aside the facts Defendants' rely on for the causation argument, the facts alleged in Jones' complaint – taken as true – do support the causal connection element of Jones' retaliation claim.  In particular, Jones alleges that he was instructed by his superior to confront – by himself – a violent offender.  He also alleges that his superior sat and watched him be assaulted by the offender and did nothing to assist him.  Jones alleges that all of this was done in contravention of TDCJ policy.  These allegations of Jones do not support the existence of a conspiracy between Jones' supervisor (Roderick Smith) and the offender who assaulted Jones, but they do support a conclusion

that Smith was indifferent to the danger he was putting Jones in.  At this early pleading stage, taking Jones' factual allegations as true, and disregarding the additional "facts" argued by Defendants in their Motion to Dismiss, the undersigned concludes that Jones has alleged sufficient facts to support the causal connection element of his prima facie case, and has, consequently, alleged a plausible retaliation claim.   Defendants' Motion to Dismiss the retaliation claim is therefore DENIED.

Signed at Houston, Texas, this 2nd  day of December, 2016.

_____
Frances H. Stacy
United States Magistrate Judge